**SUNSHINE MINING COMPANY,**
**Plaintiff-Appellee,**

v.

**UNITED STATES of America,**
**Defendant-Appellant.**

No. 86–3502.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 3, 1987.

Decided Sept. 18, 1987.

John S. Simko, Boise, Idaho, for plaintiff-appellee.

Richard J. Driscoll, Washington, D.C., for defendant-appellant.

Before CANBY, REINHARDT and BEEZER, Circuit Judges.

BEEZER, Circuit Judge:

Sunshine Mining Company operates a mine in Idaho from which ore yielding silver, copper, lead, iron and antimony is extracted. This case arises from the Commissioner's disallowance of a depletion deduction claimed by Sunshine for production of antimony in 1975. The district court held, on summary judgment, that Sunshine was entitled to the deduction. The government timely appealed. We reverse.

## I

## FACTS

### A. The Depletion Deduction

Since 1926, Congress has granted a deduction from gross income for mineral depletion, a deduction intended to offset the exhaustion of capital assets by mine owners. 26 U.S.C. § 611; *United States v. Cannelton Sewer Pipe Co.*, 364 U.S. 76, 81 et seq., 80 S.Ct. 1581, 1584, 4 L.Ed.2d 1581 (1960). The deduction was originally available to oil and gas producers only, but subsequent amendments have extended the tax benefit to nearly all mineral producers. In general, the deduction equals the taxpayer's gross income attributable to mining multiplied by a percentage that varies with the particular mineral produced. 26 U.S.C. § 613.[1] If a producer engages in both mining and nonmining activities, the regulations provide a way to calculate the portion of gross income to which the percentage deduction may be applied. *See* Treas.Reg. § 1.613–4(a–e). Obviously, it is in the taxpayer's interest to characterize as "mining" as many of its activities as possible, so as to maximize the deduction. The statutory definition of "mining" at issue in this case appears at § 613(c)(4)(D):

---

1. Since all subsequent statutory citations will be to the Internal Revenue Code, the designation "26 U.S.C." will be deleted. Unless otherwise noted, all statutes and regulations are unchanged since 1975.

[I]n the case of ... minerals which are not customarily sold in the form of the crude mineral product[2] ["mining" processes include] crushing, grinding, and beneficiation by concentration (gravity, flotation, amalgamation, electrostatic, or magnetic), cyanidation, leaching, crystallization, precipitation (but not including electrolytic deposition, roasting, thermal or electric smelting, or refining), or by substantially equivalent processes or combination of processes used in the separation or extraction of the product or products from the ore or the mineral or minerals from other material from the mine or other natural deposit....

## B. Sunshine's Antimony Production

Sunshine's ore is valuable chiefly for its silver content, but antimony is recovered as well. Recovery of antimony not only yields a marketable metal, it also facilitates the ultimate smelting of the silver.

The following is an outline of Sunshine's operation. The raw ore is first crushed and then separated by a flotation process into high grade silver-copper concentrate, several low grade concentrates, and worthless waste rock. The waste is discarded and the low grade concentrates are sold to smelters which recover lead and iron. The high grade concentrate cannot profitably be sold to a silver smelter until its high antimony content is reduced by leaching in hot sodium sulfide. Once this is done, the purified silver-copper concentrate is washed and sent to the smelter. Finally, the dissolved antimony is recovered from the leachate solution by electrowinning: direct current is passed through the solution, causing metallic antimony to form on the cathode. The remaining solution can be recycled to leach antimony from a fresh load of ore.

The parties agree that the extraction, crushing, flotation and leaching stages of this operation count as "mining" for purposes of the depletion deduction. They differ on the proper characterization of the electrowinning process.

## C. Procedural Background

The Commissioner disallowed part of Sunshine's claimed depletion deduction for 1975 on the ground that the electrowinning process was not mining and that Sunshine was not entitled to a deduction based on its gross income from the sale of antimony. Sunshine paid the assessed tax and sued for recovery in the district court. Both parties agreed to a stipulation of facts and moved for summary judgment. In October 1985, the district court ruled, with little explanation, in favor of Sunshine.[3] The government timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## II

## ANALYSIS

This court reviews a grant of summary judgment de novo. *Vance v. Hegstrom*, 793 F.2d 1018, 1022 (9th Cir.1986). In this case, both parties stipulated to the material facts and claimed judgment as a matter of law. Since the district court's application of the statutory scheme to the stipulated facts required consideration of the values underlying that scheme, the proper standard of review on appeal is de novo. *See United States v. McConney*, 728 F.2d 1195, 1202 (9th Cir.), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

The government's case is simple. Section 613(c)(4)(D) specifically excepts "electrolytic deposition" from the category of mining processes. *See also* § 613(c)(5). Electrowinning is electrolytic deposition. Sunshine does not disagree that electrowinning is electrolytic deposition but argues that it is a mining process or, alternatively, that it is necessary or incidental to a mining process.[4] As the following discussion

---

**2.** Antimony and silver are not commonly sold in the form of "crude mineral product," unlike coal, sulfur and clay. Other portions of the tax code define what processes count as "mining" these latter minerals

**3.** Other issues were raised and ruled on below, but they are not relevant to this appeal.

**4.** Section 613(c)(2) provides:
The term "mining" includes not merely the extraction of the ores or minerals from the ground but also the treatment processes ...

shows, we reject Sunshine's arguments and reverse the decision of the district court.

## A. Is Electrowinning Precipitation?

Sunshine argues that electrowinning is (or is substantially equivalent to) precipitation because both processes can be used to recover metals from solution. Precipitation is on the list of mining processes in § 613(c)(4)(D).

Electrowinning and precipitation use different means to recover metals. The first depends on the migration of charged ions when subjected to direct current and produces relatively pure metal at the cathode. The second depends on the chemical combination of different substances to form insoluble compounds. These important differences detract from Sunshine's attempt to analogize electrowinning and precipitation. Moreover, Congress explicitly rejected the analogy when it defined precipitation as mining and electrolytic deposition as nonmining.

Sunshine tries to avoid the plain statutory language by suggesting that, while three kinds of electrolytic deposition may be nonmining processes, electrowinning of antimony is a mining process. In other words, Sunshine argues that the general language which defines mining to include processes "substantially equivalent" to precipitation should override the specific reference to "electrolytic deposition" as a nonmining process. This argument fails for two reasons. First, it runs counter to the usual presumption that specific language in a statute controls the general terms. *See Markair, Inc. v. C.A.B.*, 744 F.2d 1383, 1385 (9th Cir.1984). Second, it is self-defeating. No one form of electrolytic deposition can be distinguished from the rest on the ground that it is similar to precipitation. All forms of electrolytic deposition involve the recovery of solid metal from solution; all are equally like precipitation in that respect.

described in paragraph [(c)(4)(D)] (and the treatment processes necessary or incidental

## B. Is Electrowinning Mining?

Prior to 1960, the tax code defined mining broadly as "the ordinary treatment processes normally applied by mine owners or operators in order to obtain the commercially marketable mineral product or products." *United States v. Cannelton Sewer Pipe Co.*, 364 U.S. 76, 84, 80 S.Ct. 1581, 1585, 4 L.Ed.2d 1581 (1960) ("*Cannelton*"). This definition had a major shortcoming: mining was defined in terms of the vague notion of a "commercially marketable mineral product." In *Cannelton*, the parties could not agree about what the taxpayer's "product" was. The taxpayer, a clay and shale mine which marketed finished articles made from fired clay, claimed that all processes applied to obtain these "commercially marketable mineral products" should be recognized as mining. The Supreme Court disagreed, noting that the taxpayer could have sold its clay and shale in an unfinished state (though perhaps not at a profit). Accordingly, the Court held that mining ended when the clay and shale were extracted from the ground. *Cannelton*, 364 U.S. at 86, 80 S.Ct. at 1586.

The "commercially marketable" test and its difficulties were eliminated when Congress amended the depletion allowance statute in 1960, replacing the general definition of mining with "a specific designation of those processes that would be considered as mining." *Barton Mines Corp. v. C.I.R.*, 446 F.2d 981, 996 (2d Cir.1971). This specific designation of mining processes appears at § 613(c)(4)(D); as explained above, electrolytic deposition is specifically excluded.

Sunshine tries to revive the pre–1960 general definition of mining by pointing to a current regulation which provides:

[T]reatment processes considered as mining, and the processes ... which are substantially equivalent thereto, will be recognized as mining only to the extent that they are applied to the taxpayer's ore or mineral for the purpose of separation or extraction of the valuable mineral

thereto)....

product or products from the ore. Treas. Reg. 1.613–4(f)(4).

Sunshine argues from this passage that the depletion deduction statute must be given a "functional analysis," that any process which separates valuable minerals from valueless ore should count as mining. Sunshine misunderstands the passage from the regulations. The regulations do not say that any process which separates valuable minerals from ore is mining; they say only that, even if a process is substantially equivalent to a listed mining process, it will not be considered as mining unless it separates minerals from ore. Since electrowinning is not substantially equivalent to precipitation, the passage quoted from the regulations is inapplicable.

Moreover, Sunshine's definition of mining is overbroad and self-defeating. It is overbroad because smelting and refining separate valuable minerals from ore, yet no one would argue that smelting and refining are mining processes. It is self-defeating if Sunshine insists that mining (including electrowinning) separates minerals from "valueless" ore. If the raw ore (or the leachate used in electrowinning) has no value, then no capital stock of ore is depleted and there is no reason to grant a depletion deduction. *See Cannelton*, 364 U.S. at 88, 80 S.Ct. at 1587.

### C. Is Electrowinning Necessary or Incidental to Mining?

According to § 613(c)(2), a process necessary or incidental to a mining process is itself a mining process. Even processes specifically listed as nonmining (like electrolytic deposition) can nevertheless be counted as mining processes if they are necessary or incidental to mining in a particular situation. *See* § 613(c)(5). Sunshine argues that electrowinning is necessary or incidental to two mining processes, the leaching of silver-copper concentrate and the recovery of antimony.

The regulations provide:

A process is "necessary" to another related process if it is essential to the performance of the other process.

\* \* \* \* \* \*

A process is "incidental" to another related process if the cost thereof is insubstantial in relation to the cost of the other process or if the process is merely the coincidental result of the application of the other process. Treas.Reg. 1.613–3(f)(2)(iii).

The regulations suggest that "necessary" is to be interpreted narrowly. For example, mineral storage may be necessary if a certain process "cannot be effectively applied" without a stock of stored minerals. Sunshine's argument is that leaching cannot be effectively done without electrowinning because the cost of obtaining fresh sodium sulfide without recycling would be prohibitive.

■ We reject Sunshine's commercial gloss on "necessary." A test of commercial necessity, or "necessary to make a profit" would have uncertain and uneven application, depending on the market price of the mineral, the grade of the ore, and the producer's location and overall profit margin. Moreover, it would penalize more efficient producers. The commercial sense is not required by the statute or regulations. We read the term "necessary" narrowly, so that electrowinning would be necessary to leaching only if there was no known way to leach silver-copper concentrate without electrowinning.

■ Sunshine's argument that electrowinning is necessary to the recovery of antimony is beside the point unless it is first shown that "recovery of antimony" is a mining process. In fact, the two processes are the same from Sunshine's point of view, so Sunshine is in the curious position of arguing that electrowinning is necessary for itself. In any case, the argument that "recovery of antimony" is mining reduces to the claim, considered and rejected above, that any process separating valuable minerals from ore is mining. Recovery of antimony is instead a practical result that does not qualify as a mining process to which electrowinning can be necessary or incidental. As such, the exception in section 613(c)(5) is inapplicable.

Finally, electrowinning is not "incidental" to any other process, mining or other-

wise. Neither party claims that the cost of electrowinning is "insubstantial" or that electrowinning is a mere "coincidental result" of some other process.

### D. Should This Court Follow *Ranchers*?

Sunshine relies heavily on a Tenth Circuit case, *Ranchers Exploration & Development Corp. v. United States*, 634 F.2d 487 (10th Cir.1980). In *Ranchers*, the court held that

> the term "electrolytic deposition," as it appears in ... § 613(c)(4)(D), encompasses only those processes ... that start with solid metal or partially processed ore and beneficiate the same to a degree that such processes constitute smelting, refining or manufacturing. We hold that electrowinning ... is an allowable mining treatment process since it extracts the first identifiable valuable mineral from the raw ore leach solution.

*Ranchers*, 634 F.2d at 493.

The *Ranchers* court accepted many of the arguments considered and rejected above and concluded that it could not "accept ... a literal construction [of the statute] as the will of Congress." *Ranchers*, 634 F.2d at 492. To that extent, as earlier parts of this opinion show, we believe the court erred. It is unnecessary to assign error, however, because *Ranchers* is distinguishable from the present case on three grounds. First, the court emphasized that the electrowinning process used by the Ranchers Corporation had replaced an earlier "cementation" process which both parties acknowledged was mining. *Ranchers*, 634 F.2d at 488–89. In this case, by contrast, the antimony electrowinning process did not replace an earlier mining process. Before 1942, Sunshine sold its silver-copper concentrate directly to smelters for refining. Second, the *Ranchers* court noted that "[w]e would perhaps be inclined to characterize [electrowinning] as a refining process if the resulting solid were sufficiently pure to meet commercial standards." *Ranchers*, 634 F.2d at 493. In this case, Sunshine admits that the antimony recovered in electrowinning is commercially usable, though some of it is refined further. Finally, the copper electrowinning process used by the Ranchers Corporation produced the first identifiable valuable mineral from the raw ore. That case involved a copper mine and it is understandable that the court considered all the work necessary to recover a salable ore as mining. In this case, antimony is recovered as a byproduct after several grades of valuable ore, including the high grade silver-copper concentrate, have already been separated and sold.

### III

### CONCLUSION

The depletion statute clearly excepts electrolytic deposition (including electrowinning) from the list of mining processes. We reject Sunshine's attempt to override this clear language with its own general theory of mining. We also reject the argument that electrowinning is necessary or incidental to a mining process in the narrow sense intended by Congress. Accordingly, the decision of the district court is

REVERSED.